UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FEB 15 2017

**RECEIVED**

# UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
        v.                   )
                             )
NEIL STEWART,                )
                             )
        Defendant.           )
_____)

LET THIS BE FILED.
**HONORABLE KETANJI BROWN JACKSON**
**U.S. DISTRICT JUDGE**
2/21/2017

Criminal No. 16-CR-67 (KJB)

# FILED

### FEB 2 1 2017

Clerk, U.S. District and
Bankruptcy Courts

## PRESENTENCE MITIGATION REPORT IN AID OF SENTENCING

Constitutional Law Advocates respectfully submits this PreSentence Mitigation Report to further aid the Court in imposing sentence in the above-captioned case. The sentencing hearing is scheduled for February 21, 2017 at 2:30 PM.

### I. Introduction

Mr. Stewart was charged with Simple Possession of Child Pornography and numerous related enhancements. Through the undersigned Forensic Mitigation Specialist, Dixie Bennett submits this PreSentence Mitigation Report In Aid Of Sentencing, requesting a sentence of (i) Twenty-Four (24) to Thirty (30) months of incarceration in a Federal Bureau of Prisons Law-Custody Facility in Petersburg,

Virginia and three (3) years of Supervised Release that would include Out-Patient Drug Treatment; (ii) a $100 special assessment and no fine. Mr. Stewart is entitled to numerous downward departures from the U.S. Sentencing Guidelines based upon several issues. The instant PreSentence Mitigation Report addresses some of these issues and relies upon the authorities cited herein and reason to all issues raised. It is in this vast ocean of sentencing uncertainty that the Defendant's plea now drifts. Mr. Stewart deserves for this Court to reduce the base offense level to one more representative of the rehabilitative goals of the criminal justice system. Mr. Stewart stands to be convicted of the crimes charged and incarceration in a federal correctional facility is the price society demands. However, the period of incarceration should be commensurate with the gravity of the crime and should reflect the potential for reform and degree of criminal involvement of the respective defendant. While future deterrence and community sentiment are factors to be considered, the sentencing equation should be dominated by considerations of fairness and justice. On the unique facts of this case, I believe that under 18 U.S.C. §3553, a non-Guidelines sentence of twenty-four (24) to thirty (30) months is warranted.

Based on the record before his Honorable Court and the arguments made herein, this Court is respectfully urged to depart downward from the government's

recommendation and impose a twenty-four (24) to thirty (30) months sentence, keeping in mind that Mr. Stewart complied with the terms of his plea agreement.

## II. __The Applicable Sentencing Standard__

Following *United States v. Booker,* 125 S. Ct. 738 (2005), the Court must impose a sentence in accordance with 18 U.S.C. §3553(a), and should no longer presume that a sentence calculated pursuant to the United States Sentencing Guidelines is appropriate. *United States v. Pickett,* 475 F.3d 1347, 1353 (D.C. Cir. 2007). Indeed the correctly calculated Guidelines range is but one factor for the Court to consider in imposing sentence. Most significantly, the Court must impose a sentence "sufficient, *but not greater than necessary"* to comply with the purposes of punishment set forth in 18 U.S.C. §3553(a)(2). *See also United States v. Foreman,* 436 F.3d 638, 644 n. 1 (6th Cir. 2006) ("district court's job is not to impose a 'reasonable' sentence [but] to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)"); *United States v. Tucker,* 473 F.3d 556, 561 (4th Cir. 2007) (same); *United States v. Willis,* 479 F.Supp.2d 927, 929 (E.D. Wis. 2007) (explaining that "the so-called parsimony provision . . . directs the court to impose the minimum term necessary to comply with the statutory goals of sentencing"). Those purposes include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct";

and "to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(A), (B) and (C).

Pursuant to §3553(a), courts must also consider a number of other factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; and the Guidelines. *Id.* at §3553(a)(1), (3), and (4); *see also United States v. Simpson,* 430 F.3d 1177, 1186 (D.C. Cir. 2005). Under this new sentencing regime, a court should consider all of the relevant sentencing factors, giving no more weight to one factor than to any other factor. The focus of the new regime is thus a sentence based on the whole person before the sentencing court, rather than simply the version of the person reflected in the numbers and grids of the Guidelines. Here, that focus means that I respectfully urge the Court to sentence Mr. Stewart based on the portrait of him in this and the PreSentence Investigation Report ('PSR') and in the letters submitted on his behalf, rather than on the basis of some incomplete or distorted picture.

In *Booker,* Justice Breyer concluded that "without the mandatory provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals.   125 S. Ct. 738, 764, citing 18 U.S.C.A. §3553(a) (supp.2004).

### III.  The Statutory Sentencing Scheme

In fashioning an appropriate sentence in a criminal case, 18 U.S.C. §3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing."  The purposes of sentencing include the need for the sentence imposed:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2).

In deciding whether a particular sentence satisfies these purposes of sentencing, the Court should consider a number of other factors, including:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the kinds of sentences available;

(3)  the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines issued by the Sentencing Commission pursuant to Section 994(a)(1) of title 28, United States Code;

(4)  any pertinent policy statement . . . issued by the Sentencing Commission;

(5)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)  the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

## IV.  <u>The Nature and Circumstances of the Offense</u>

Mr. Stewart acknowledges that he has committed a serious crime. Mr. Stewart is entering his guilty plea accepted, and continues to accept full responsibility for his actions in that regard.  Beyond accepting responsibility for his wrongful conduct, Mr. Stewart is prepared to accept the further consequences of that conduct and is deeply regretful.  In an effort to begin making amends for his conduct, Mr. Stewart has cooperated with federal authorities in an effort to provide assistance in furthering the investigation and prosecution of other illegal activities but fell short of obtaining a 5K1.1 Substantial Assistance Motion from the government.  Mr. Stewart's conduct has brought shame upon his family and himself.  The embarrassment he has caused on his family and friends has greatly affected him, and he is doing all he can to make amends to them.

Mr. Stewart's personal story of artistic achievement in the areas of the visual arts to include sculpture, sketching and painting has been inspirational and aspirational, especially to all those he has mentored who, like him, began life's

journey under difficult circumstances.  Mr. Stewart has completed and sold over 200 commissioned art pieces.  He hopes that his acknowledgment of wrongdoing, his full acceptance of responsibility, and his attempted assistance and full cooperation with federal authorities, will allow him to begin the process of correcting his errors. His hope is that his acknowledgment of wrongdoing can begin to place him back on the road where he was prior to making this terrible exercise in judgment.

Mr. Stewart is absolutely clear about the adverse impact that his wrongdoing has had to all involved and he fully understands that his conduct has created a diminished image under substantial question.

Mr. Stewart had possession of child pornography which he viewed by himself. This motive should bear on the issue of the appropriate punishment, especially in light of *Booker, see United States v. Brown,* 439 F.Supp.2d 134, 135-36 (D.D.C. 2006) ("Booker's remedy . . . ensured that a sentencing court may consider whatever facts it deems relevant – subject to limitations imposed by Congress – in determining the appropriate penalty within the statutorily prescribed spectrum for an offense."); *United States v. Milne,* 384 F.Supp.2d 1309, 1313 N.4 (E.D. Wis. 2005) ("After *Booker,* courts are required to consider any §3553(a) factor put forward by the defense that might make the guideline sentence inappropriate . . . .  In many cases, this requirement will necessitate consideration of the Defendant's motive for committing the offense . . .") (emphasis in original; citations omitted).

The PreSentence Report fairly outlines the offense in this case. Noe of these facts are described in an effort to justify in any manner Mr. Stewart's conduct or detract from his prompt and unconditional acceptance of responsibility. Rather, it is submitted that these circumstances can appropriately be considered in mitigation of the sentence.

## V. <u>The Plea Agreement</u>

The Plea Agreement provided that, should the Defendant cooperate with the government, the government would consider recommending a reduced sentence. The Defendant did attempt to provide substantial assistance, but fell short of the prize. The Defendant's willingness to plead guilty, pretrial, is entitled to consideration.

## VI. <u>The Relevant Guidelines Calculation</u>

Although the U.S. Supreme Court declared the Guidelines advisory, we recognize that the Court is obligated to compute the relevant sentencing range under the Guidelines when completing its sentencing analysis. *United States v. Caunaris,* 399 F.3d 343, 351 (D.C. Cir. 2005) ("a sentencing court is required to consider Guidelines ranges applicable to the Defendant, but is permitted to tailor the sentence in light of other statutory concerns as well") (internal citations and quotations omitted).

In accordance with U.S.S.G. Section 5K2.0 and the U.S. Supreme Court's opinion in *United States v. Koon,* a court may depart from the Guidelines if it finds that mitigating factors, not otherwise prohibited by the Guidelines, are "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factors are present." 518 U.S. 81, 96 (1996).  In this case, the PSR and this Report identifies numerous mitigating factors that are present to such a significant degree to warrant downward departure.  The cumulative effect rule related to said mitigating factors supports same.  These factors may form the grounds for a departure when they are present to an exceptional degree, as they are in this case.  *See Koon,* 518 U.S. at 96; U.S.S.G. Section 5K2.0(a)(4).  And, even if the factors are not truly exceptional in their own right, in combination they may nonetheless remove the case from the "heartland" of typical Guidelines cases.  See 5K2.0(c).  Mr. Stewart's case is sufficiently extraordinary to justify a downward departure on that basis alone; but certainly, when considered in conjunction with the other factors, this case is outside the "heartland" of typical Guidelines cases.  *See Koon, 518* U.S. at 96.

The Court should also consider the extent to which the conviction alone is devastating to Mr. Stewart, especially with its collateral consequences, i.e. "registering as a sex offender."  Further, because Mr. Stewart has been the object of so much local negative publicity, it would be extremely controversial for any

employer where he lives to hire him, yet if he accepts employment from Walmart in Monroe, Georgia, he will be forced to relocate and to incur the costs of relocation and renting an apartment.  Because Mr. Stewart's future employment opportunities are now so sharply circumscribed, a downward departure is appropriate.  See *United States v. Jones,* 158 F.3d 492, 499 (10th Cir. 1998) (affirming downward departure based in part on the "collateral employment consequences [the Defendant] would suffer.

It is also appropriate for the Court to consider that Mr. Stewart is highly unlikely to commit a criminal offense in the future.  Mr. Stewart has never violated the law previously, and the letters submitted on his behalf suggest that he has no propensity toward a criminal behavior.

The U.S. Supreme Court has clarified its holding in *Booker,* holding that a sentence outside the Guidelines range is not presumptively unreasonable, and therefore a sentencing judge may not presume that the Guidelines range is reasonable.  *See Gall v. United States,* 552 U.S. 38, 49 (2007).

Considering all of the statutory factors and other information relating to Mr. Stewart, imposing a sentence of 24-30 months is justified and appropriate, with a short term of Supervised Release, $100 Special Assessment and no fine is sufficient.

A district court must give respectful consideration of the Guidelines in determining a sufficient sentence.  *Gall,* 128 S.Ct. at 594, but it may not presume

that the Guidelines sentence is the correct one.  *See Rita v. United States,* 127 U.S. 2456, 2465 (2007).  The Court is free to consider whether the Guidelines sentence itself "fails to properly reflect §3553(a) considerations in the case at hand, *Rita,* 1275 S.Ct. at 2465, and/or whether the Guidelines at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role."  *See Kimbrough,* 1285 S.Ct. at 575.

Sentencing options available to district court judges have "significantly broadened."  *See United States v. Moon,* 513 F.3d 527-544 (6th Cir. 2008) quoting *Gall,* 128 S.Ct. at 602.  District courts are now free from any requirement that they mechanically adhere to the right structures of the Guidelines, nor are courts required to even presume that the Guidelines provide an appropriate sentence in a given case.

Recognizing that the Guidelines are simply the "Starting Point" in a sentencing analysis, district courts must delve deeper and make an "individualized assessment based on the facts presented."  *See Gall,* 128 S.Ct. 597.  A district court may reasonably determine that a within-Guidelines sentence does not serve the objectives of sentencing, even if that determination ultimately rests on a disagreement with the Guidelines.  *See Kimbrough,* 128 S.Ct. at 564.  *See also United States v. Pugh,* 515 F.3d 1179, 1190-91 (11th Cir. 2008).

In the final analysis, the goal of performing an individualized sentencing assessment is to arrive at a just sentence, one "sufficient, but not greater than

necessary." 18 U.S.C.A. §3553(a), to serve the purposes of sentencing set forth in §3553(a)(2). *See United States v. McBride,* 511 F.3d 1293, 1297 (11th Cir. 2007). The sentencing court is "free to conclude that the applicable Guidelines range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy." *See United States v. Campos Maldanado,* 531 F.3d 337 (5th Cir. 2008).

## VII. Determining the Proper Guidelines Sentence for Downward Departures

Whether the basis for a further downward departure is extraordinary rehabilitation, extraordinary acceptance of responsibility or aberrant behavior, or a combination of two or more of these recognized grounds it is respectfully submitted that Mr. Stewart is entitled to an additional downward departure. This Court has consistently recognized the need to examine the totality of the circumstances to determine whether a downward departure is appropriate under 18 U.S.C. §3553(b). *See United States v. Ribot,* 97 F.Supp.2d 74 (D. Mass. 1999); *United States v. Fulton,* 960 F.Supp. 479, 497-98 (D. Mass. 1997). Indeed, in *Ribot,* the totality of the circumstances, including the Defendant's first offender status, has significant contributions to the disadvantaged community and an otherwise "law-abiding life," permitted a downward departure for aberrant behavior. It is respectfully submitted that the totality of circumstances take "this case outside that heartland of the

12

particular guideline," and thus make a downward departure beyond that recommended by the government warranted.  *See Koon v. United States,* 518 U.S. 81, 109, 116 S. St. 2035, 135 L.Ed. 2d 392 (1996).

The numerous reasons for downward departure include: (1) Acceptance of Responsibility; (2) Aberrant Behavior; (3) Safety Value; (4) Attempted Substantial Assistance; (5) Substance Abuse; (6) No Mens Rea To Commit Harm to Anyone; (7) Base Offense Level  Overstates the Seriousness of the Offense; (8) Base Offense Level Services No Deterrent Purpose; (9) Post-Offense Rehabilitation.

## VIII.  A Sentence of Twenty-Four to Thirty Months Would Satisfy the Requirements of Section 3553(a)(2)

Turning to §3553(a)(2), the Court must also consider the need for Mr. Stewart's sentence to (i) reflect the seriousness of his offense, promote respect for the law, and provide just punishment for the offense; (ii) adequately deter criminal conduct; and (iii) protect the public from further crimes of the defendant.

A. The Seriousness of the Offense

The offenses here are serious ones.  Nevertheless, as the Court metes out "just punishment," we urge the Court not to overlook the punishment Mr. Stewart has already received, and stands to receive in the future, as a result of his convictions.  Mr. Stewart's felony convictions make it unlikely that he will ever work again without scrutiny.

## IX.  The Requested Sentence is Sufficient,
## But Not Greater than Necessary, to Satisfy the Purposes of Punishment

The requested sentence plus community service will achieve retributive justice, and is sufficient, but not greater than necessary, to satisfy the purposes of punishment as articulated in 18 U.S.C. §3553(a)(2).  Specifically, the punishment reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; it affords adequate deterrence; and, it protects the public from further crimes of Mr. Stewart.  Mr. Stewart is a non-violent, first-time offender, with a respected record of positive contributions to his community.  He has fully accepted responsibility for his conduct, having pled guilty pre-indictment, and he has expressed genuine remorse. Mr. Stewart has demonstrated respect for the law by cooperating with law enforcement, and providing assistance in the government's ongoing investigations.  The stigma of a federal felony conviction, and the highly-publicized nature of Mr. Stewart's guilty plea constitute substantial punishment for Mr. Stewart, as he has suffered public humiliation and intense media scrutiny as a result of his actions.  He has already been subjected to embarrassment and shame in front of his family and friends.  Along with the requested sentence which could include community service, this degree of humiliation achieves retributive justice that fits the crime.  With regard to deterrence, the requested punishment is an adequate and appropriate penalty that will serve the purpose of deterring Mr. Stewart

from breaking the law again.  The highly-publicized nature of these proceedings also serves as a unique and significant deterrent to others who may consider committing similar crimes in the future.  Mr. Stewart has been shaken to his core by the events that have unfolded over the past months.  Not only is he genuinely remorseful about his misconduct, he is determined to make a positive example of himself so that others in his community can learn from his mistakes.  With regard to protecting the public, Mr. Stewart poses no danger to society that would require his incarceration.

## X.  The Proposed Sentence Would Reflect the Seriousness of the Offense

Mr. Stewart is no longer employed, likely unemployable by most, he has suffered greatly, both emotionally and financially.  He has lost his source of income, thereby jeopardizing his ability to provide financially for his family.  He has experienced dire consequences as a result of his wrongful misconduct. It is not necessary to incarcerate Mr. Stewart longer that the proposed sentence.

**The base offense level overstates the seriousness of the offense.**  *See* 18 U.S.C. §3553(a)(2)(A).  In this case, the increase in the base offense level for possession, as well as the upward variances, more than doubles the sentence otherwise recommended by the Guideline range.  This extreme increase is not supported by evidence of a high risk of harm to others.

## XI.  A Sentence of Twenty-Four to Thirty Months Will Adequately Deter Future Criminal Conduct and Promote Respect for the Law

**The base offense level serves no deterrent purpose.**  *See* 18 U.S.C. §3553(a)(2)(B).  Even assuming that increased severity deters, this could only work if a significant number of individuals learned that if they distributed child pornography in addition to possessing it, they would face tougher sanctions because of a provision in the Guidelines.  If anything, it would make more sense to increase the offense level for illegal distribution because it is far more likely that distribution of child pornography could be used to commit a crime far worse than possession.  In any event, all reliable empirical research shows that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects . . . .  Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."  Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime and Justice: A Review of Research 28-29 (2006).  This is because potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers.  *Id.*  "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general

deterrence mechanisms." Gary Kleck, et al. *The Missing Link in General Deterrence Theory,* 43 Criminology 623 (2005).

## XII. **Mr. Stewart Does Not Pose a Threat to Society**

Mr. Stewart has not assaulted or harmed any other person, before, during or after the offense conduct.

**The base offense level is not necessary to protect the public from further crimes of Client.** 18 U.S.C. §3553(a)(2)(C). Mr. Stewart did not possess any firearm in connection with a crime of violence or drug trafficking offense. As an employed 31-year old man, Mr. Stewart's risk of recidivism is exceedingly low. U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 12 & Exs. 9, 10 (2004).

## XIII. **The Need to Avoid Unwarranted Disparities**

The requested sentence would not create a disparity, much less an unwarranted disparity, among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553(a)(6). Conversely, a sentence providing for an executed sentence of imprisonment would fit neither the offense, nor this offender. As discussed above, Mr. Stewart acknowledges the serious nature of his actions, accepts full responsibility for his misconduct, and does not suggest that what he did should be excused, condoned, or minimized. Yet he has pled guilty to conduct

that, though deserving of criminal punishment, does not necessitate a severe sentence of incarceration.

Mr. Stewart has cooperated as fully as he could with the government in its investigation of his conduct and with respect to other matters. This cooperation also underscores the fact that Mr. Stewart is deserving of the requested sentence, and that a lengthy sentence of incarceration for any time period would not fit this offender.

### XIV.  The Needs of the Public and the Victims of the Offense

A sentence of 24-30 months imprisonment is sufficient to provide general deterrence to the public, and make individuals think again before engaging in conduct involving child pornography. Mr. Stewart suggests that specific deterrence has already been accomplished, as he has been terminated from his life-long employment, and admitted guilt to his crimes, for which he is ashamed. The public does not need to be protected from Mr. Stewart.

Additionally, there were no victims connected to this case.

Mr. Stewart has led a law-abiding life his entire life before the commission of the present offense.

Mr. Stewart's conduct was the result of circumstances unlike to recur.

Mr. Stewart's character and attitude indicates that he is unlikely to commit another offense.

## XV.  At No Time Did Mr. Stewart Have Any Intention to Harm Anyone

The mitigating factors substantially outweigh any aggravating factors present. Mr. Stewart did not cause, nor did he threaten to cause, any serious harm to anyone. Additionally, Mr. Stewart did not contemplate that his conduct would cause or threaten serious harm to any other person.

## XVI.  The Requested Sentence is Authorized

A sentence of twenty-four (24) to thirty (30) months is not precluded by any statute or by the Sentencing Guidelines.  The requested sentence would be consistent with Congress' directive that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious offenders who post the most dangerous threat to society," Pub.L.No. 98-473, Section 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. §3551.)  Mr. Stewart does not pose a dangerous threat to society.

## XVII.  Acceptance of Responsibility

The Defendant has accepted responsibility for the conduct charged for which he will become sentenced.

## XVIII.  Aberrant Behavior

Mr. Stewart's criminal conviction constitutes "aberrant behavior" entitling him to a departure from the applicable Sentencing Guidelines.  *U.S. v. Pozzy,* 902

F.2d 133, 137-138 (1st Cir. 1990) (holding modified on other grounds by, *U.S. Rivera,* 994 F.2d 942 (1st Cir. 1993)); citing *U.S. v. Russell,* 870 F.2d 18 (1st Cir. 1989).

The circumstances of this case warrant a reduced sentence on the basis of aberrant behavior. The Sentencing Guidelines provide that a departure may be warranted in exceptional circumstances where the defendant committed "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. 5K2.20. In making the determination as to whether the Court should depart on the basis of aberrant behavior, the Court may consider the defendant's "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." *Id.*

## XIX. Substantial Assistance

It was hoped that the government would have made a motion under 18 U.S.C. §3553€, 28 U.S.C. 994(N) and 5K1.1 pursuant to U.S.S.G. ("substantial assistance motion") due to Mr. Stewart's attempted substantial assistance which did not lend to a prosecution, yet Mr. Stewart was still truthful.

The Defendant's acknowledgement of wrongdoing and cooperation was immediate after being confronted by law enforcement agents. His initial cooperation was not the product of negotiation between his counsel and the government, nor was it predicated on a plea agreement, promises or other inducements. Both his initial cooperation and his subsequent unequivocal attempted substantial assistance more than justifies a relatively moderate downward departure. Indeed, it is submitted that Mr. Stewart's level of cooperation, coupled with other factors addressed herein, may warrant the imposition of a split sentence.

Mr. Stewart has been willing to accept responsibility for his conduct from the beginning. The defendant suggests that there is a significant difference between an individual who simply accepts responsibility by pleading guilty, and whose advisory guidelines range is thus reduced pursuant to U.S.S.G. §3E1.1, and the defendant who attempts to assist the government, even if his assistance is not viewed by the government as substantial enough to warrant a downward departure.

## XX. <u>Safety Value</u>

This firm takes the position that the Court should apply U.S.S.G. § 5C1.2 and 18 US.S. § 3553(f) ("Safety Value Adjustment") and impose a sentence without regard to the statutory minimum – mandatory sentence applicable to this case. The Defendant has been truthful in is disclosures.

The PSR normally correctly determines a defendant's eligibility for the safety value pursuant to 2D1.1(b)(6) and 5C1.2, yet notwithstanding the lack of the PSR's recommendation, this Court should award the "safety value" to Mr. Stewart, either on the basis that there exists no victim, as a subject of a violent offense, or on the basis that Mr. Stewart actually attempted offer substantial assistance even though it never came to fruition. The Court is also not limited to a two-level downward adjustment and may sentence Mr. Stewart below the applicable mandatory minimum sentence.

## XXI. Substance Abuse

Mr. Stewart's significant history of substance abuse without significant rehabilitation is a mitigating circumstance not adequately taken into consideration by the U.S. sentencing commission. *See U.S. v. Taylor,* 868 F.2d 125 (5th Cir. 1989).

As a result of the Defendant's substance abuse history, the Court is requested to recommend that he receive the 500-hour Federal Bureau of Prisons Drug Treatment Program while incarcerated.

## XXII. Extraordinary Post-Offense Rehabilitation

A defendant's post-offense rehabilitation may be the basis for downward departure if it is "extraordinary" and "exceed[s] ordinary expectations." *U.S. v. Sklar,* 920 F.2d 107, 116 (1st Cir. 19990). This departure has also been described as "hen's-teeth rate." *U.S. v. Craven,* 239 F.3d 91, 99 (1st Cir. 2001). "The touchstone

of extraordinary rehabilitation is a fundamental change in attitude." *Id.* at 100. The defendant must demonstrate a "real, positive behavioral change . . . and a commitment to repair and rebuild his or her life." *U.S. v. Motto,* 2002 WL 1018575 *2 (E.D. Pa. 2002) (internal quotation marks omitted).

## XXIII. Personal Use

Mr. Stewart's role in this offense does not justify the extreme sentence recommended by U.S. Probation. With the exception of one exchange of a few visuals, at no time has Mr. Stewart engaged in the distribution of child pornography. It is not alleged that Mr. Stewart sold visual pictures of child pornography. In fact, all child pornography were used by himself, viewed as entertainment. Mr. Stewart's case should be viewed like a drug case. The First Circuit has held that personal use quantities may be included in relevant conduct. *See United States v. Innamorate,* 996 F.2d 456 (1st Cir. 1993). Other circuits have concluded that personal use amounts should be deducted from relevant conduct. *United States v. Williams,* 247 F.2d 353 (2d Cir. 2001); *United States v. Gonzales,* 307 F.3d 906 (9th Cir. 202); *United States v. Asch,* 207 F.3d 1238 (10th Cir. 2000).

Moreover, because the Defendant did not seek to profit from his conduct in personally viewing the child pornography, he should not receive the same sentence under the Guidelines or as §3553 as defendants who sold/distributed child pornography.

## XXIV.  <u>Mr. Stewart's Personal History and Characteristics Support a Sentence of Twenty-Four to Thirty Months</u>

Generous mentor, selfless friend and devoted husband.  This is a rich portrait of Neil Stewart that emerges from descriptions of him by persons from neighborhood friends, former co-workers and family who say that Neil Stewart has earned a lifetime reputation for treating people kindly and fairly, as well as comforting those who are distressed.  Mr. Stewart has touched many lives and in all aspects of his life, he has been a caring and responsible husband, son, friend and a very hard-working individual.  The PreSentence Report and letters of support submitted to the Court from family and friends clearly describes an individual who is dedicated to, and provides support for, his family, cares for his mother and elderly and infirm grandmother, worked hard at his job for six (6) years, cross-trained in all positions at Olive Garden and for another six (6) years as a fine dining chef at Corbels in Leonardtown MD.  Mr. Stewart has lived in Maryland for twelve (12) years and is married to Sequoyah Stewart after having lived with her from 2012-2015.  Mr. Stewart is a seasoned musician, plays guitar, bass and drums, specializing in progressive rock and Jazz fusion.  His hobby interests are Physics, Cooking, Reading Self-Help books, Science and Gardening.

## XXV.  **Emotional Support System**

It should be noted that Mr. Stewart has hundreds of friends, but has felt ashamed, embarrassed and humiliated due to a lot of local publicity in the southern Maryland area where he has lived for the last twelve (12) years.

Mr. Stewart has and will depend on the following as his emotional support system:  (1) Sequoyah Stewart (wife); (2) Sherry Johnson (mother); (3) Ralph Johnson (step-father); (4) Ruth Billings (grandmother); (5) Russell Billings (uncle); (6) Sarah Seto (best female friend); (7) Dixie Bennett (future employer).  Any one of the foregoing is happy to assist Mr. Stewart upon his release from incarceration; (8) Raichelle Johnson (sister); (9) B'elanna Johnson (sister); (10) Duncan Johnson (brother); (11) Kenny Stewart (brother) are Mr. Stewart's siblings and are also willing to pitch in and assist him adjust back into society.

## XXVI.  **Sentencing Recommendation**

"The sentencing judge [is] to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue."

*United States v. Koon,* 518 U.S. 81, 113 (1996).

Upon considering the characteristics of Mr. Stewart and his offence, this Court should find that a sentence of 24-30 months imprisonment, followed by a term of supervised release, no restitution, a $100 special assessment, and no fine, is

"sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a). Mr. Stewart is prepared to respect and serve whatever sentence that is imposed by this Court and is determined to return to his family and his community a better person.

## XXVII. <u>Conclusion</u>

Based on the foregoing arguments, points and authorities, this Honorable Court is respectfully urged to impose a sentence consistent with the arguments set forth herein.

Date: 2/13/2017

Dixie Bennett
Forensic Mitigation Consultant

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 13th day of February, 2017, a copy of the foregoing PreSentence Mitigation Report in Aid of Sentencing was served upon the United States Attorney for the District of Columbia, 555-4th Street, NW, Washington, DC 20530 via first class mail, U.S. postage, prepaid.

Rene Babcock

27

# PRIORITY MAIL EXPRESS™

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

FASTEST SERVICE IN THE U.S.

USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

uly 2013   OD: 12.5 x 9.5

1000100000006

UNITED STATES POSTAL SERVICE®

NATIONAL USE

PRIORITY
★MAIL★
EXPRESS™

U.S. POSTAGE
PAID
CONYERS, GA
30013
FEB 13, 17
AMOUNT
$23.75
r2305612S523-15

USE A BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT (if applicable)

FROM: (PLEASE PRINT)                    PHONE (

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)                      PHONE (

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 of insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code          Scheduled Delivery Date (MM/DD/YY)     Postage
                     2/14/17                                $ 23.75
Day ☐ Day
☐ Military ☐ DPO

Date Accepted (MM/DD/YY)   Scheduled Delivery Time    Insurance Fee
2/13                       ☐ 10:30 AM  ☐ 3:00 PM      $

Time Accepted    ☐ AM        10:30 AM Delivery Fee    Return Receipt Fee
                 ☐ PM        $                         $

Weight           ☐ Flat Rate  Sunday/Holiday Premium Fee    COD Fee
        lbs.  oz.             $                              $

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)  Time  ☐ AM   Employee Signature   Total Postage & Fees
                                   ☐ PM                        $ 23.75

Delivery Attempt (MM/DD/YY)  Time  ☐ AM   Employee Signature
                                   ☐ PM

LABEL 11-B, SEPTEMBER 2015    PSN 7690-02-000-9996    3-ADDRESSEE COPY






This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.